IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JOSEPHINE CLANCY,

                          Plaintiff,

       vs.                               Civil Action No.
                                     04-CV-1099 (LEK/DEP)

JO ANNE B. BARNHART, Commissioner
of Social Security,

                       Defendant.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF:

GREATER UPSTATE LAW PROJECT  LOUISE TARANTINO, ESQ.
119 Washington Avenue
Albany, NY 12210

FOR DEFENDANT:

HON. GLENN T. SUDDABY        WILLIAM H. PEASE, ESQ.
United States Attorney for the    Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

OFFICE OF GENERAL COUNSEL    BARBARA L. SPIVAK, ESQ.
Social Security Administration     Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278              SUSAN REISS, ESQ.
                                 Assistant Regional Counsel

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Josephine Clancy, who during the period at issue suffered

from both mental and physical impairments, including principally a

musculoskeletal condition of the cervical region accompanied by C-7

cervical radiculopathy, osteoarthritis in her knees, and tendinitis in her

right thumb, has commenced this proceeding to challenge an

administrative determination that she was not disabled, and thus ineligible

to receive disability insurance Social Security benefits, between

September of 1982 and March 21, 1986, when she was determined to be

disabled based upon having turned fifty-five.  Plaintiff contends that the

Commissioner's determination, which turns upon a finding that during that

period she retained the residual functional capacity ("RFC") to perform a

full range of light work notwithstanding her medical conditions and

corresponding limitations, is not supported by substantial evidence in the

record.  Arguing in favor of reversal, plaintiff maintains that the

administrative law judge ("ALJ") who heard and decided the matter at the

agency level did not accord sufficient weight to the contrary opinions of

her treating physicians or properly evaluate her allegations of disabling

-2-

pain and weakness.

Based upon a thorough review of the record, and considering carefully the arguments advanced by the parties, I find that the ALJ's determination of no disability resulted from the application of proper legal principles, and is adequately supported by substantial evidence in the record. I therefore recommend that the agency's decision be affirmed, and plaintiff's complaint in this action be dismissed.

I.   BACKGROUND

Plaintiff was born on March 21, 1931; at the time of the alleged onset of her disability, she was fifty years old. Administrative Transcript at p. 193.[1]  During the period at issue, plaintiff was five feet one inch in height, and weighed two hundred twenty pounds. AT 247. Plaintiff had no children under the age of eighteen at the time of her application for benefits and, during the relevant period, was separated from her husband, whom she had married in November of 1957.[2]  AT 195.

At the time of the alleged onset of her disability, plaintiff had

---

[1]      Portions of the Administrative Transcript and Supplemental Administrative Transcripts (Dkt. Nos. 8, 11, 16) filed by the Commissioner will be cited as "AT ___."

[2]      Plaintiff's husband is now deceased. *See In Forma Pauperis* Appl. (Dkt. No. 2) at 2.

completed several years of college and was working toward achieving her bachelors degree in the field of elementary education.  AT 327.  Plaintiff last worked in 1981; prior to that time she was employed in several different industries dating back to 1967.  AT 216-19.  Plaintiff worked from 1967 until 1972 as a teacher in an elementary school, where she taught and supervised elementary schoolchildren and was required to lift books and other school supplies.  *Id*.  Plaintiff subsequently worked as a motel maid from 1972 to 1974, cleaning motel rooms.  *Id*.  In that position, plaintiff was required to lift chairs and mattresses weighing in excess of fifty pounds.  *Id.*  Plaintiff was next employed as a supervising janitor from 1974 to December 31, 1981, when she stopped working as a result of her neck, right shoulder, and right arm conditions.  AT 193, 216-19.  As a supervising janitor, plaintiff was responsible for supervising and training employees, cleaning the inside of a building, and keeping inventory of and maintaining cleaning equipment and supplies, requiring her to lift heavy objects.  AT 217.

In 1975, plaintiff slipped and fell on spilled oil in a mall parking garage, striking her head on the concrete floor, and as a result losing consciousness.  AT 203, 208, 224, and 241.  Plaintiff was transported to a

local hospital emergency room, where she subsequently regained consciousness and was discharged.  AT 241.  As a result of the fall, plaintiff suffered neck pain and headaches for which she received medical treatment in the form of physical therapy, cervical traction, and collar.  AT 241.  In response to this treatment, plaintiff's symptoms eventually subsided.  *Id.*

Plaintiff's symptoms were exacerbated in April of 1981 when she developed severe migraine headaches, resulting in nausea and fainting spells; plaintiff attributes these revitalized symptoms to work related activities.  AT 241.  As a result of this recurrence, plaintiff began treatment under the care of Dr. Joel V. Woodruff, a neurologist, in March of 1982.  *Id.*  At that time, Dr. Woodruff reported that plaintiff appeared to be suffering from muscle contracture headaches secondary to cervical disc disease, with evidence of C-7 radiculopathy with weakness of the triceps, grip, and wrist extensors.  *Id.*  X-rays taken on May 13, 1982 at Dr. Woodruff's request revealed only minimal degenerative changes in plaintiff's cervical spine from 1975.  AT 238.

Plaintiff continued to treat with Dr. Woodruff on a sporadic basis after 1982.  In reports of follow-up visits throughout 1983 and 1984, Dr.

Woodruff opined that plaintiff suffered from cervical muscle strain, with no evidence of nerve root dysfunction.  AT 380-81.  Throughout this time period, Dr. Woodruff also performed neurologic examinations of the plaintiff, discerning no weakness or reflex change or evidence of focal neurologic deficit.  AT 381-82.  Although a longitudinal view of Dr. Woodruff's reports reflects that plaintiff's overall condition improved under his care, it also indicates continued reports by the plaintiff of severe headaches, throbbing and pain in her right arm and shoulder, limited use of her right arm, and pain and tightness in her neck and arms.  AT 235-43.

On August 15, 1983, plaintiff began treating with Dr. S.D. Patel, an orthopedist, for pain and swelling in her right knee, a condition plaintiff has attributed to an incident in November of 1978 when she struck her knee on an open desk drawer.[3]  AT 247.  Dr. Patel's clinical records reflect his findings that plaintiff had subpatellar tenderness with crepatation, but retained full range of movement in her knee.  AT 386.  An x-ray of plaintiff's knee taken on March 7, 1984 revealed early degenerative changes with patellar spurring and minimal narrowing of the inner

---

[3]     Although plaintiff points to the blow to her knee as the origin of her problems, Dr. Martin S. Farber, who later treated her for the condition, opined that the incident was not a significant contributory factor in her osteoarthritis.  AT 431.

compartment.  *Id.*  After complaining of tightness and swelling of her right knee on February 1, 1985, plaintiff was diagnosed by Dr. Patel as suffering from arthritis of the right knee, involving mostly the medial compartment.  AT 387.

On December 18, 1985, plaintiff was examined by Dr. Martin S. Farber, a rheumotologist, who noted that plaintiff complained of pain, swelling, and stiffness in both knees.  AT 406.   Dr. Farber diagnosed the plaintiff as suffering from osteoarthritis of the knees, bilaterally, and prescribed Tolectin and Tagamet, advising her to use a walking cane and apply an ice pack to her knees several times daily.  AT 406-10.  Beginning January 8, 1986, Dr. Farber's records indicate that although plaintiff continued to report pain knee pain, her symptoms gradually reduced and her condition improved.  AT 408-10.  By March 5, 1986, Dr. Farber noted that plaintiff's knees were essentially asymptomatic.  AT 410.

On December 18, 1985, plaintiff sought treatment from Dr. Farber for pain experienced in her right thumb.  AT 406.  Dr. Farber diagnosed plaintiff with tendinitis of the extensor pollicis longus tendon ("EPL") of her right thumb and, on January 8, 1986, performed surgery to alleviate her EPL symptoms.  AT 409.  Dr. Farber's follow-up records dated March 18,

1986 reveal that although plaintiff continued to report numbness and weakness in her right thumb, by that time her right EPL tendinitis had apparently resolved and she enjoyed full range of motion in her hands. AT 410.

Plaintiff also complained of and sought treatment for chronic bronchitis during the period at issue.  Dr. Brig Goel examined plaintiff in December of 1985 and noted that she had a history of chronic bronchitis, which plaintiff reported had first developed when she was twenty-seven or twenty-eight years old.  AT 411.  Despite this reported history, a radiologist report dated December 17, 1985 reveals that at that time plaintiff had a normal chest with no abnormalities of the heart, lungs, or osseous structures.[4]  AT 414.

In addition to obtaining treatment for her physical impairments, plaintiff also claimed to suffer from various mental conditions.  In a consultative psychiatric report in 1985, Dr. Neal Rzetkowski noted that plaintiff has complained of anxiety attacks, hyperventilation, numbness of

---

[4]      The record reflects that in addition to her neck, arm, knee, and thumb conditions, plaintiff has suffered at certain of the relevant times from severe headaches diagnosed by one physician as a form of ophthalmoplegic migraine headache, though also suspected of being vascular in origin.  *See*, *e.g.*, AT 241, 376. Plaintiff does not urge her headaches as a disabling condition in this administrative review proceeding.

hands and feet, and a pounding heart.  AT 397.  According to Dr.

Rzetkowski's report, plaintiff's symptoms improved with the use of Xanax.

*Id.*  Dr. Rzetkowski also remarked that plaintiff's thoughts were coherent,

her speech was not pressured, and her mood and affect were appropriate.

AT 398.

     II.     PROCEDURAL HISTORY

     A.     Proceedings Before The Agency

     Plaintiff first filed an application for benefits with the Social Security

Administration (the "agency") on May 13, 1983, alleging a disability onset

date of December 31, 1981 due to degeneration of a disc in her neck.  AT

193.  On June 24, 1983, the agency denied that application, finding that

her impairments did not affect her ability to work.  AT 197-200.  In

response to plaintiff's request for reconsideration, the agency issued a

notice on July 26, 1983, upholding the previous determination.  AT 204-

05.

     At plaintiff's request, a hearing was set for October 21, 1983.  AT

250.  Based upon plaintiff's failure to appear, however, and a finding that

she had demonstrated good cause for that failure, the hearing was

subsequently rescheduled for November 17, 1983.  *Id.*  Plaintiff's failure

once again to appear for the November 17, 1983 hearing coupled with her inability to provide reason for that failure, however, led to dismissal of the hearing request on December 2, 1983 by ALJ Thomas W. Murrett.  AT 250.

Plaintiff filed a second application for disability benefits on November 7, 1985, again alleging a disability onset date of December 31, 1981.  AT 251.  In this later application, plaintiff averred that her disabling conditions included chronic bronchitis, arthritis in her right knee and shoulder, and emotional problems.  *Id.*  That application was denied by the agency, both initially and on reconsideration, based once again upon a finding that plaintiff retained the capacity to perform her previous work. AT 263, 271.

On June 8, 1990, plaintiff again filed an application for disability benefits, alleging a disability onset of March 2, 1982.  AT 280.  The agency denied that claim on August 20, 1990, and later upheld that determination on reconsideration, based upon plaintiff's request.  AT 294, 320-21.

At plaintiff's request, a hearing was conducted before ALJ Hastings Morse on January 1, 1990 with respect to the denial of her application for

disability insurance benefits.  AT 46.  Following that hearing, at which

plaintiff was represented by counsel, ALJ Morse rendered a decision

dated February 21, 1990.  AT 46-50.  In his decision ALJ Morse, although

noting that plaintiff suffered from several severe impairments, found that

plaintiff possessed the RFC to perform her past relevant work at all times

during the period between March 2, 1982 and September 30, 1987.[5]  AT

47-49.  Accordingly, ALJ Morse concluded that plaintiff was not entitled to

disability insurance benefits during this period.  AT 46-50.

On April 10, 1992, the Social Security Administration Appeals

Council issued a decision partially reversing ALJ Morse's decision.  AT

64-66.  The Appeals Council explained that in light of the classification of

plaintiff's previous job as medium work and Dr. Woodruff's opinion that her

impairments limited her to light work, ALJ Morse's finding that plaintiff was

capable of performing her previous job of a cleaning supervisor could not

withstand scrutiny.  AT 64-66.  Accordingly, that reviewing body concluded

that plaintiff was disabled effective as of March 21, 1986, when she turned

fifty-five years of age, meeting the criteria of rule 202.06 of the medical-

vocational guidelines set forth in the Commissioner's regulations (the

---

[5]        September 30, 1987 is significant as the date on which plaintiff's
disability insured status expired.  AT 57.

"grid"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, which directs a ruling of disabled.[6]  20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.06.  The Appeals Council went on to conclude, however, that for the period March 26, 1982 to March 21, 1986, plaintiff's vocational characteristics conformed with medical-vocational rule 202.14, which directs a ruling of not disabled, and therefore agreed with ALJ Morse's finding that plaintiff was not disabled for this period.  AT 65.  In accordance with this decision, plaintiff was found to be entitled to disability insurance benefits beginning on March 21, 1986 under sections 216(i) and 223 of the Social Security Act.  AT 66.

Plaintiff's circumstances were revisted by the agency when she was found to be a member of the *Stieberger v. Sullivan* class action lawsuit and, accordingly, entitled to have the issue of her disability reajudicated for the period September 1982 to March 21, 1986.[7]  AT 11, 124.  Plaintiff's application was accordingly reopened and reviewed, resulting in a notice to the plaintiff on November 24, 1998, indicating that the agency had reviewed evidence covering the period prior to March 21, 1986, and

---

[6]     When an individual reaches age fifty-five, the agency considers him or her a person "of advanced age," a factor which often, as occurred in this case, tips the balance in favor of a finding of disability.  AT 58.

[7]     *Stieberger v. Sullivan*, 801 F. Supp. 1079 (S.D.N.Y. 1992), was a class action suit settled on the basis of the Commissioner's agreement to reopen and review certain claims adjudicated between October 1, 1981 and July 2, 1992.

decided to adhere to its previous decision denying her benefits for that period.[8]  AT 124.

At plaintiff's request, a hearing was conducted on July 21, 1999 by ALJ Morse to address the denial of plaintiff's application for disability insurance benefits prior to March 21, 1986.  AT 11-19.  No testimony was taken at that hearing.  AT 16.  Following the close of proceedings, ALJ Morse issued a decision dated September 16, 1999 finding that plaintiff was not disabled prior to March 21, 1986, and therefore not entitled to receive disability insurance benefits prior to this date.  AT 19.   In making his decision, ALJ Morse considered medical evidence developed with regard to plaintiff's care and treatment, statements by the plaintiff on various questionnaires regarding her symptoms and limitations, as well as a post-hearing memorandum of law filed by plaintiff's counsel on August 13, 1999.  AT 11-19, 171-88.

To reach his decision, ALJ Morse applied the familiar, five-step sequential test for analyzing claims of disability.  AT 18.  At step one, ALJ Morse found that plaintiff had not engaged in substantial gainful activity since her alleged onset of disability on December 31, 1981.  *Id.*

---

[8]     This decision had no impact on the disability payments plaintiff received for the period after March 21, 1986.

Proceeding to steps two and three, ALJ Morse first concluded that plaintiff did not suffer from severe respiratory, gastrointestinal, or mental impairments.  AT 12-13.  ALJ Morse next found that although plaintiff suffered from severe musculoskeletal impairments that limited her ability to perform work-related activities, her condition did not meet or equal the severity of any of the presumptively disabling impairments listed in the governing regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1.  AT 18.

Turning to step four, ALJ Morse examined the medical evidence to evaluate plaintiff's ability to perform work-related functions in light of the limitations associated with her medical impairments.  AT 12-18.  Accepting both plaintiff's statement that her past relevant work as a supervising janitor required her to lift up to fifty pounds and Dr. Woodruff's assessment that plaintiff could not lift more than twenty-five pounds, ALJ Morse concluded that she was unable to perform her past relevant work. AT 13.

Proceeding to step five of the relevant, sequential analysis, ALJ Morse examined plaintiff's medical history to determine her RFC and other characteristics relevant to the grid.  AT 14-17.  Citing, among other medical evidence, Dr. Woodruff's reported determination that plaintiff

could sit, stand, and walk without limitation and lift up to twenty-five pounds, ALJ Morse determined that plaintiff retained the RFC to perform a full range of light work activity.[9]  AT 14, 18.  In making that finding ALJ Morse acknowledged that in another report, Dr. Woodruff had expressed the opinion that plaintiff was unable to return to work in any capacity.  AT 15.  ALJ Morse discredited that opinion, however, after noting that it was contradicted by Dr. Woodruff's own reports, which indicated that plaintiff could sit, stand, and walk, without limitation, and lift up to twenty-five pounds, and that plaintiff could return to work as long as she avoided heavy lifting and pulling.  AT 16, 245-46.

Considering plaintiff's capacity to perform a full range of light work activity, her age at the alleged date of disability onset, her two-year

---

[9]     Light work is defined by regulation as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567.

college education, and semi-skilled work experience, ALJ Morse

concluded that plaintiff was not disabled prior to March 21, 1986.  AT 17.

The ALJ's decision became final when, on January 28, 2003, the Appeals

Council denied her request for review of that determination.  AT 5-6.

> B.   This Action

Plaintiff commenced this action on September 21, 2004.  Dkt. No. 1.

Issue was thereafter joined by defendant's filing of an answer,

accompanied by an administrative transcript of the proceedings before the

agency, on February 15, 2005.  Dkt. Nos. 7, 8.  With the filing of

supplemental administrative transcripts on April 27, 2005 (Dkt. No. 11)

and July 12, 2005 (Dkt. No. 16), together with briefs on behalf of the

plaintiff on July 20, 2005 (Dkt. No. 19) and the Commissioner on

September 22, 2005 (Dkt. No. 22), the matter is now ripe for

determination, and has been referred to me for the issuance of a report

and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

District of New York Local Rule 72.3(d).  *See also* Fed. R. Civ. P. 72(b).[10]

---

[10]      This matter has been treated in accordance with the procedures set forth
in General Order No. 18 (formerly, General Order No. 43) which was issued by the
Hon. Ralph W. Smith, Jr., then-Chief United States Magistrate Judge, on January 28,
1998, and later amended and reissued by then-Chief District Judge Frederick J.
Scullin, Jr., on September 19, 2001.  Under that General Order an action such as this
is considered procedurally, once issue has been joined, as if cross-motions for

III.   DISCUSSION

   A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp.2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, her decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Martone*, 70 F. Supp.2d at 148.  If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586;

judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

*Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13

F. Supp.2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. §

405(g).

The term "substantial evidence" has been defined as "'such relevant

evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420,

1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197,

229, 59 S. Ct. 206, 217 (1938)).  To be substantial, there must be "'more

than a mere scintilla'" of evidence scattered throughout the administrative

record.  *Id.*; *Martone*, 70 F. Supp.2d at 148 (citing *Richardson*).  "To

determine on appeal whether an ALJ's findings are supported by

substantial evidence, a reviewing court considers the whole record,

examining the evidence from both sides, because an analysis of the

substantiality of the evidence must also include that which detracts from

its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v.*

*NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards

have been applied, and/or that substantial evidence does not support the

agency's determination, the agency's decision should be reversed.  42

-18-

U.S.C. § 405(g); *see Martone*, 70 F. Supp.2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp.2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Secretary of Dep't of Health & Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Retirement Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Secretary of Health & Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

      B.     <u>Disability Determination: The Five Step Evaluation Process</u>

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months[.] "  42 U.S.C. §

423(d)(1)(A).   In addition, the Act requires that a claimant's

> physical or mental impairment or impairments
> [must be] of such severity that he is not only
> unable to do his previous work but cannot,
> considering his age, education, and work
> experience, engage in any other kind of substantial
> gainful work which exists in the national economy,
> regardless of whether such work exists in the
> immediate area in which he lives, or whether a
> specific job vacancy exists for him, or whether he
> would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be

employed in determining whether an individual is disabled.  *See* 20 C.F.R.

§§ 404.1520, 416.920.  The first step requires a determination of whether

the claimant is engaging in substantial gainful activity; if so, then the

claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§

404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then

the second step involves an examination of whether the claimant has a

severe impairment or combination of impairments which significantly

restricts his or her physical or mental ability to perform basic work

activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer

from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled".  *Martone*, 70 F. Supp.2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728

F.2d at 585; *Martone*, 70 F. Supp.2d at 150.

    C.    <u>The Evidence In This Case</u>

    Pivotal to the Commissioner's finding of no disability is ALJ Morse's determination that plaintiff retains the RFC to perform a full range of light work.  Plaintiff challenges that RFC finding, arguing that it is not supported by substantial evidence, and additionally that in making that finding, the ALJ did not accord proper weight to the opinions of her treating physicians.

    1.    <u>RFC Determination</u>

    A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue.  20 C.F.R. § 404.1545(a).  An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis.  *Id.*; *Martone*, 70 F. Supp.2d at 150.

    To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull.  20 C.F.R. § 404.1569a.  Nonexertional limitations or impairments, including impairments which

result in postural and manipulative limitations, must also be considered. 20 C.F.R. § 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e).  When making an RFC determination, an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice. *Martone*, 70 F. Supp.2d at 150 (citing *Ferraris,* 728 F.2d at 587).  An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations.  *Martone*, 70 F. Supp.2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F.Supp. 300, 309-10 (E.D.N.Y. 1997).

Plaintiff's contention that the ALJ's RFC finding is unsupported by substantial evidence overlooks several crucial pieces of evidence.  One such critical record is the medical assessment completed on August 28, 1983 by plaintiff's treating neurologist, Dr. Woodruff, in which he reported that she retained the ability to sit, stand, and walk without limitation, and was capable of lifting, carrying, and handling objects weighing up to twenty-five pounds.  AT 245-46.  In later reports filed in October 1984 and April 1986, Dr. Woodruff noted that the plaintiff was capable of returning to

work subject only to the limitation that she avoid heavy lifting and pulling.[11]

AT 381, 385.  These assessments are fully consistent with, and thus

provide substantial evidence to support, the ALJ's finding that plaintiff was

at the relevant times capable of performing the range of activities

described by the agency as consistent with the ability to perform light

work.  20 C.F.R. § 404.1567.

It should be noted that although Dr. Woodruff's follow-up reports

indicate plaintiff continued to complain of neck and arm pain, they also

demonstrate no change in her condition following the assessment

conducted in August 1983.  *See*, *e.g.*, AT 380-84.  Dr. Woodruff

consistently found plaintiff's neurological examinations to be normal with

no indication of weakness or reflex change, and ultimately reported that

she did not require further neurologic follow-up.  AT 236-37, 380-84.

Moreover, clinical findings related to plaintiff's cervical radiculopathy

revealed improvement, leading Dr. Woodruff to eventually diagnose her

condition as mild cervical strain.  AT 14, 16, 381.

The ALJ's RFC finding is also congruent with medical assessments

---

[11]    As will be seen, sandwiched between those reports is a notation from Dr. Woodruff, dated November 27, 1984, indicating that in his view the plaintiff should not perform lifting or pulling, and therefore should work only in a sedentary position.  AT 381.  *See* pp. 25-30, *post*.

completed by Dr. Patel and Dr. Farber in connection with plaintiff's knee

impairments.  In June of 1984, Dr. Patel interpreted an x-ray of plaintiff's

knee as revealing early degenerative changes with patellar spurring; his

clinical examination records from that date, however, revealed a full range

of movement of the knee, with a stable collateral ligament.  AT 386.  Dr.

Farber, who had opined that plaintiff had osteoarthritis of the knees, also

reported that plaintiff had full range of motion of both knees.  AT 406-10.

Beginning January 8, 1986, Dr. Farber's records indicate that although

plaintiff continued to report knee pain, her symptoms had gradually

diminished in severity, and her condition had improved.  AT 408-10.  By

March 5, 1986, Dr. Farber noted that plaintiff's knees were essentially

asymptomatic.  AT 410.

Dr. Farber's findings in relation to plaintiff's thumb condition also

comport with the ability to perform light work.  On January 18, 1986, Dr.

Farber diagnosed plaintiff with tendinitis of the EPL of her right thumb.  AT

409.  Dr. Farber's follow-up records dated March 18, 1986 reveal that

although plaintiff continued to report numbness and weakness in her right

thumb, her right EPL tendinitis had apparently resolved.  AT 410.  Dr.

Farber also consistently found that plaintiff had full range of motion of her

thumb and hands.  AT 407, 408, 410, 431.

In sum, while there is modestly conflicting evidence on the record, the ALJ's finding that plaintiff retained the RFC to perform light work notwithstanding her neck, arm, knee, and thumb conditions is supported by substantial evidence on the record.

### 2.    Treating Physician

At the heart of plaintiff's challenge to the agency's determination is the ALJ's rejection of opinions rendered by her treating neurologist, Dr. Woodruff, on February 16, 1983 and November 27, 1984, regarding her capacity to return to work.  In his report of February 16, 1983, Dr. Woodruff records a restriction on plaintiff's ability to perform any lifting, carrying, pushing, or pulling and stating that she was unable to work in any capacity.  AT 235.  As plaintiff points out, on November 27, 1984 Dr. Woodruff reiterated that plaintiff should not perform any lifting or pulling, but reported that she could work in a sedentary job.  AT 381.  Plaintiff argues that these reports demonstrate that she was precluded from performing light work during the relevant period.

Although the two assessments plaintiff cites are contradictory to the findings of the ALJ, the mere fact that there is conflicting evidence in the

record does not negate a finding of substantial evidence to support the

Commissioner's decision.  *E.g.*, *Kleiman v. Barnhart*, No. 03 Civ. 6035,

2005 WL 820261, at *13-*14 (S.D.N.Y. Apr. 8, 2005).  Plaintiff goes on,

however, to urge that the two disputed medical notations take on special

significance because they represent opinions of her treating physician.

Ordinarily, the opinion of a treating physician is entitled to

considerable deference, provided that it is supported by medically

acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with other substantial evidence.[12]  *Veino*, 312 F.3d at 588;

*Barnett*, 13 F. Supp.2d at 316.  Such opinions are not controlling,

however, if contrary to other substantial evidence in the record.  *Veino*,

---

[12]   The regulation which governs treating physicians provides:

> Generally, we give more weight to opinions
> from your treating sources . . . If we find that a
> treating source's opinion on the issue(s) of the
> nature and severity of your impairment(s) is
> well-supported by medically acceptable
> clinical and laboratory diagnostic techniques
> and is not inconsistent with the other
> substantial evidence in your case record, we
> will give it controlling weight.   When we do
> not give the treating source's opinion
> controlling weight, we apply [various factors]
> in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

312 F.3d at 588.  Where conflicts arise in the form of contradictory medical evidence, their resolution is properly entrusted to the Commissioner.  *Id.*

In deciding what weight, if any, an ALJ should accord to medical opinions, he or she may consider a variety of factors including "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof[.]"  *See Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (discussing 20 C.F.R. §§ 404.1527, 416.927).

When a treating physician's opinions are repudiated, the ALJ must provide reasons for the rejection.  20 C.F.R. §§ 404.1527(Dkt. No.)(2), 416.927(Dkt. No.)(2).  Failure to apply the appropriate legal standards for considering a treating physician's opinions is a proper basis for reversal and remand, as is the failure to provide reasons for rejection of his or her opinions.  *Johnson*, 817 F.2d at 985; *Barnett*, 13 F. Supp.2d at 316-17.

ALJ Morse's rejection of these two, isolated opinions at issue is both adequately explained and well supported by evidence in the record.  As the ALJ made clear, he based his rejection on the fact that the February

16, 1983 opinion finds little or no support in the medical records, and is even contradicted by Dr. Woodruff's own clinical findings.  AT 15-16. Once again, Dr. Woodruff's own reports contradict the rejected opinions, and a longitudinal observation of his clinical records indicates that plaintiff's cervical radiculopathy improved.  Significantly, in a report dated August 28, 1983, and thus rendered at a point between the two cited by plaintiff, Dr. Woodruff stated that plaintiff could sit, stand, and walk without limitation, and lift and carry up to twenty-five pounds.  AT 245-46.  A review of Dr. Woodruff's subsequent reports reflects no substantial change in plaintiff's condition from August 1983 to justify the sedentary work limitation noted in November of 1984.  AT 380-84.

Other medical evidence on the record also contradicts the rejected opinions and substantiates the conclusion that plaintiff could engage in light work at the relevant times.  A comparison of an x-ray taken in May 1982 with another x-ray taken in 1975, for example, reveals minimal degenerative changes in plaintiff's cervical spine and no substantial changes from 1975.  AT 365.  Additionally, Dr. Woodruff's neurologic examinations from 1984 and 1985 reveal no abnormalities, weakness, or reflex change.  *E.g.*, AT 381-82.

-29-

It was within the ALJ's discretion to discredit Dr. Woodruff's opinions rendered February 1983 and November 1984 to the extent that they run counter to other substantial evidence in the record.  *Veino*, 312 F.3d at 588.  I note, parenthetically, that Dr. Woodruff's statement in November 1984 that plaintiff was able to work in a sedentary capacity, such as in a secretarial position, as well as his suggestion in February of 1983 that plaintiff was not able to work, are not entitled to special deference since they speak to the ultimate issue reserved to the Commissioner.  *See* 20 C.F.R. § 404.1527(e)(1); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

Having reviewed the rejected opinions of Dr. Woodruff, which are potentially in conflict with the ALJ's findings, in the context of the balance of the clinical evidence in the record and the ALJ's stated rationale for rejecting them, I find that they were properly discounted and do not provide a basis to overturn the Commissioner's decision.  20 C.F.R. 404.1527(d).

        3.    <u>Pain</u>

Although the argument is not pressed in her brief, in her complaint plaintiff contends that the ALJ did not accord sufficient weight to her allegations of disabling pain and weakness which, she maintains,

undermined her ability to perform light work.[13]  Complaint (Dkt. No. 1) ¶
17.

An ALJ must take into account subjective complaints of pain in
making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d),
416.929(a), (d).  When examining the issue of pain, however, the ALJ is
not required to blindly accept the subjective testimony of a claimant.
*Marcus*, 615 F.2d at 27; *Martone*, 70 F. Supp.2d at 151 (citing *Marcus*).
Rather, an ALJ retains the discretion to evaluate a claimant's subjective
testimony, including testimony concerning pain.  *See Mimms v. Heckler*,
750 F.2d 180, 185-86 (2d Cir. 1984).  In deciding how to exercise that
discretion the ALJ must consider a variety of factors which ordinarily
would be relevant on the issue of credibility in any context, including the
claimant's credibility, his or her motivation, and the medical evidence in
the record.  *See Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL
59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. & Smith, M.J.) (citing
*Marcus*, 615 F.2d at 27-28)).  In doing so, the ALJ must reach an
independent judgment concerning the actual extent of pain suffered and

---

[13]      In making this argument plaintiff apparently refers to statements made on
various questionnaires, referenced by the ALJ in his decision, *see* AT 16-17, since no
testimony was taken at the hearing held on July 21, 1999.

its impact upon the claimant's ability to work.  *Id.*

When such testimony is consistent with and supported by objective

clinical evidence demonstrating that claimant has a medical impairment

which one could reasonably anticipate would produce such pain, it is

entitled to considerable weight.[14]  *Barnett*, 13 F. Supp.2d at 316; *see also*

20 C.F.R. §§ 404.1529(a), 416.929(a).  If the claimant's testimony

concerning the intensity, persistence or functional limitations associated

with his or her pain is not fully supported by clinical evidence, however,

then the ALJ must consider additional factors in order to assess that

testimony, including: 1) daily activities; 2) location, duration, frequency and

intensity of any symptoms; 3) precipitating and aggravating factors; 4)

type, dosage, effectiveness and side effects of any medications taken; 5)

other treatment received; and 6) other measures taken to relieve

symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective

medical evidence, and any other factors deemed relevant, the ALJ may

accept or reject claimant's subjective testimony.  *Martone*, 70 F. Supp.2d

---

[14]    In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged. 42 U.S.C. § 423(d)(5)(A).

at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such

testimony is rejected, however, the ALJ must explicitly state the basis for

doing so with sufficient particularity to enable a reviewing court to

determine whether those reasons for disbelief were legitimate, and

whether the determination is supported by substantial evidence.  *Martone*,

70 F. Supp.2d at 151 (citing *Brandon v. Bowen*, 666 F. Supp. 604, 608

(S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial

evidence, the decision to discount subjective testimony may not be

disturbed on court review.  *Aponte v. Secretary, Dep't of Health & Human

Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984).

        It appears likely, as plaintiff asserts, that during the relevant period

she did suffer from pain and discomfort as a result of her impairments.

The fact that she suffered from discomfort, however, does not

automatically qualify her as disabled, since "disability requires more than

mere inability to work without pain."  *Dumas v. Schweiker*, 712 F.2d 1545,

1552 (2d Cir. 1983).

        As can be seen from his decision, the ALJ acknowledged the

existence of severe impairments and plaintiff's accompanying allegations

of pain and discomfort, but found her subjective allegations to be

"overstated," based principally upon a shortage of objective medical findings to support them.  AT 12, 17.  The ALJ's finding is consistent with the observations of plaintiff's treating neurologist, Dr. Woodruff, who repeatedly found plaintiff's neurological examinations to be normal, and ultimately diagnosed her condition as only a mild cervical sprain.  AT 236-37, 380-84.  Additionally, as the ALJ pointed out, Dr. Woodruff reported that plaintiff could sit, stand, and walk without limitation, and lift up to twenty-five pounds.  AT 17, 236-37, 380-84.

The ALJ's conclusion is also supported by clinical findings on the record related to plaintiff's knee and thumb conditions.  Dr. Farber, another one of plaintiff's treating physicians, reported that plaintiff did not have significant limitation of motion, weakness, atrophy, or instability in her knees, and retained full range of motion in her thumb and hands.  AT 17, 408-10, 431.  Moreover, Dr. Farber ultimately reported that plaintiff's knees were asymptomatic and that her thumb condition had resolved.  AT 407, 408, 410, 431.

In light of the foregoing circumstances, I find that the ALJ's skepticism regarding the degree of pain experienced by plaintiff was both properly explained and supported by substantial evidence on the record.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

During the period at issue, plaintiff unquestionably suffered from pain, weakness, and discomfort caused by her medical impairments. Applying the requisite deferential standard, however, I find that the ALJ's determination that, notwithstanding her symptoms, plaintiff retained the RFC to perform a full range of light work is supported by the record. Additionally, I find that the rejection of the contrary opinion of one of plaintiff's treating physicians, Dr. Woodruff, was appropriate and properly explained.  Finally, I find that ALJ Morse appropriately evaluated plaintiff's subjective complaints of debilitating pain, and in light of the shortage of clinical findings to substantiate them, properly found plaintiff's pain complaints to be "overstated."

Based upon the foregoing, it is hereby

RECOMMENDED that defendant's motion for judgment on the pleadings be GRANTED, that the Commissioner's determination of no disability be AFFIRMED, and that plaintiff's complaint in this action be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed

with the Clerk of the Court within ten (10) days.  FAILURE TO SO

OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roland v. Racette*,

984 F.2d 85 (2d Cir. 1993).

     IT IS FURTHER ORDERED, that the Clerk of the Court serve a copy

of this Report and Recommendation upon the parties by regular mail.

Dated:    July 24, 2006
             Syracuse, NY

G:\socialsecurity\Josephine Clancy.wpd

David E. Peebles
U.S. Magistrate Judge

-36-